# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT T. YOUNG,** | : | **No. 3:05cv802** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOWNSHIP OF COOLBAUGH,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is defendant's motion for summary judgment (Doc. 16).  The matter has been fully briefed and is ripe for disposition.

## I. Background

This case stems from a zoning dispute in Coolbaugh Township, Pennsylvania. Plaintiff Scott T. Young, a developer, first brought his plan to develop townhouses on 18 vacant lots covering 6.49 acres of land before the Coolbaugh Township Planning Commission on August 21, 2001.  (Amended Complaint (Doc. 9) at ¶ 8); (Defendant's Short and Concise Statement of Material Facts (Doc. 18) at  ¶ 1) (hereinafter "Defendant's Statement of Facts")).[1]  Plaintiff had purchased eight cabins from Camp Tegawitha, a nearby site, and he planned to restore them and use them in his development project.  (Amended Complaint at ¶ 8).  At the time of purchase, these buildings were scheduled for demolition in a contract between the

---

[1]We cite to the defendant's statement of facts only when there is no dispute about their truthfulness.

Pocono Mountain Industrial Authority ("PMI") and a demolition contractor.  (Id. at ¶

12).  The Planning Commission discussed land use, zoning, road maintenance, and

drainage issues related to the plan.  (Defendant's Compilation of Evidence in

Support of Motion for Summary Judgment (Doc. 19) (hereinafter "Defendant's

Compilation of Evidence") at 7).[2]  On September 18, 2001, plaintiff sought wavier of

an ordinance from the township Board of Supervisors so that he could store these

cabins on property he owned.  (Defendant's statement Facts, at 2).  He explained to

the Supervisors that his project was not feasible if he had to construct new buildings

rather than use the cabins.  (Plaintiff's Answer to Defendant's Short and Concise

Statement of Material Facts (Doc. 20) at 2).  Considering this issue a zoning matter,

members of the Board of Supervisors referred plaintiff back to the Planning

Commission.  (Defendant's Compilation of Evidence, at 15).

Plaintiff's proposal appeared again at the November 12, 2001 meeting of the

Planning Commission.  At that meeting, the Commission discussed issues such as

"maximum lot coverage, right of way width, water run-off, lot conformance" and

stormwater management and drainage.  (Defendant's Compilation of Evidence at

18).  The Commission also examined other property owners' legal rights to the road

planned for the development and the need to conform to township rules in the plan.

_____

[2]These citations to the "compilation of evidence" are to minutes of various meetings
of municipal bodies, not to the defendant's version of the facts.  Since the decisions of the
Board of Supervisors and the Planning Commission are material to this case, we will cite to
this compilation of evidence frequently.

(Id.).  A Township resident also appeared, raising concerns about the proposed use of the PMI cabins at the site and their relation to other buildings in the area.  (Id.). The Commission took no action.  (Id.).  Instead, the Commission instructed the township's zoning officer to review the plan and zoning compliance report for discussion at the Commission's next meeting.  (Defendant's Statement of Facts at 4).

The Commission next discussed Young's plans at its December 10, 2001 meeting.  (Id. at 5).  Along with the plaintiff, his surveyor Robert Mendola, and township zoning officer Ken Montalbine, the Commission engaged in "a lengthy discussion" of "lot sizes and common walls and firewalls between the modular units, [and] design problems."  (Defendant's Compilation of Evidence at 22).  The Commission sent this discussion to another room while it addressed the rest of the evening's agenda.  (Id. at 23).  When the parties returned to the meeting, Montalbine reported that the proposed lots met size requirements, and that the sides would continue to work to resolve design problems and issues related to the size of lots and backyard setbacks.  (Id.)  The Commission then voted unanimously to accept the plaintiff's development plan.  (Id. at 24).  After the Commission approved the plan, the Commission's solicitor reminded those present that the Township's Subdivision Ordinance, written before the Zoning Ordinance, required that the Commission address issues like "lot sizes [and] backyard setbacks."  (Id.).

Discussion about subdivision planning renewed at the January 14, 2002

meeting of the Planning Commission.  (Id. at 27).  At that meeting, the Commission

addressed road access to certain lots, an issue raised by the plaintiff and his

representatives.  (Id.).  This issue generated considerable discussion, and the

Commission unanimously voted to table further discussion until the interested parties

had a chance to meet and "discuss the access road, parking lot" and other issues.

(Id.).  At the Board's next meeting, on February 11, 2002, the Commission again

engaged in lengthy discussion of road access to the property.  (Id. at 31).  The

Commission eventually agreed to approve the preliminary subdivision plan, so long

as property owners provided documentation that they had eliminated "paper roads"

from their lots.  (Id.).

     At that meeting, plaintiff informed the Commission that PMI would soon

destroy the cabins he intended to use for the development, and the Commission's

solicitor agreed to call PMI and vouch "that substantial work has been done on the

above referenced project."  (Id.).  The Commission also authorized the solicitor to

write to PMI about the progress made on the project.  (Id. at 32).  The Commission

did not vote, however, to accept any development plan that included the restored

cabins.  A unanimous vote also approved plaintiff's request to extend the deadline

for the project until the March 19, 2002 meeting.  (Id.).  The Commission also

approved a motion to forward the planning module for the development to the

Pennsylvania Department of Environmental Protection.  (Id.).  When the Coolbaugh

Township Board of Supervisors met on February 19, 2002, the Board approved the

4

Commission's recommendations for an extension of the deadline for plaintiff's project and for forwarding the planning module to the DEP.  (Id. at 34-35).  The Supervisors also discussed with plaintiff his efforts to obtain documentation on paper roads from property owners.  (Id. at 34-35).

The Planning Commission met on March 11, 2002.  At that meeting, the Commission unanimously approved plaintiff's request to reduce a right-of-way along the property.  (Id. at 41).  The Commission also granted plaintiff's request to extend the deadline for approving the project to June 19, 2002.  (Id. at 41-42).  Questions about the suitability of the buildings that plaintiff intended to use for the project arose.  Brandé Mark-Falzett, who owned proprety adjoining the proposed development also addressed the meeting.  (Id. at 42).  She questioned the fire safety of the cabins plaintiff proposed to remodel, asking whether the structures contained creosote.  (Id.).  After discussion, plaintiff promised to explore the creosote situation and report both to the Planning Commission and Mark-Falzett.  (Id.).  The Board of Supervisors met on March 19, 2002 and approved unanimously the Commission's reduction of the right-of-way along the property, as well as plaintiff's request for an extension of time until June 19, 2002 to complete the application.  (Id. at 46).

The Planning Commission again addressed plaintiff's proposal on April 8, 2002.  At that meeting, the Commission discussed the Township engineer's comments about easements for a maintenance area, subdivision of the lot, and design of the streets in the project.  (Id. at 56).  The Commission unanimously

approved a motion to waive the township's cul-de-sac and turnaround requirements. (Id.)  After these discussions, the Commission tabled the proposal.  (Id. at 57).  When the Board of Supervisors met on April 16, 2002, that body unanimously approved the Commission's granting of a waiver to plaintiff of the Township's cul-de-sac and turnaround requirements.  (Id. at 60).

The Commissioners' discussion of the plan continued on May 13, 2002.  At that meeting, plaintiff submitted a new plan.  (Id. at 68).  The Township Engineer had reviewed the plan, and reported that deed information was incorrect on that document.  (Id.)  The Commission also approved a motion to grant plaintiff a waiver from city requirements for an easement around detention basins.  (Id.).  The Commission then unanimously recommended to the Board of Supervisors that they approve of plaintiff's plan for subdivision and land development.  (Id.)  This approval came with conditions; the Board had to approve the easement waiver, the information on the deed had to be corrected, the planning module approved, and a driveway occupancy permit issued.  (Id.).  Public comment that followed focused on the concerns of nearby residents that the project violated township density regulations.  (Id.)  The Commission explained that the issue had been addressed by the Zoning Hearing Board and that the Board found the project met legal requirements.  (Id.).

When the Board of Supervisors met on May 21, 2002, the Supervisors refused to approve the requested easement waiver.  (Id. at 73).  After a discussion, the

Board took no action.  (Id.).  Residents who lived near the proposed project continued to raise concerns about the structures plaintiff planned to use for the development.  Frank Falzett, an owner of adjoining property, assisted by his attorney, urged the Board not to grant the request for a waiver.  (Id.).  Falzett complained of "poor planning, the cabins having creosote, having asbestos" and other matters.  (Id.).  George Westervelt, Falzett's attorney, requested permission to sample the buildings for creosote.  (Id.)  He offered to sample the material himself and provide the Board with the results.  (Id.).  The Board agreed to table the matter until the next meeting, when a report on creosote could be heard.  (Id.)  The Board also decided to have the town solicitor and engineer review the decision of the Zoning Hearing Board regarding disputes about the suitability of common walls on the project.  (Id.).  At the meeting, plaintiff informed the Board that he had a June 15, 2002 deadline to remove the camp buildings or face their destruction.  ( Affidavit of Scott D. Young (Doc. 21) (hereinafter "Young Affidavit") at ¶ 24).

The issue next appeared before the Board of Supervisors on June 4, 2002.  At that meeting, Brandé Mark-Falzett's attorney, George Westervelt, complained again of the project's poor planning and argued that no waiver of ordinance requirements should be issued.  (Id. at  ¶ 21).  In a divided vote, the Board approved a waiver of the township's requirements for a maintenance easement around detention basis.  (Id.)  After discussing outstanding issues related to the application, the Board voted to table the application under the next meeting.  (Id.).  The Board next met on June

10, 2002.  At that meeting, plaintiff appeared and announced to the Board that he
had met all the stated conditions for acceptance of his project: approval from the
Pennsylvania Department of Environmental Protection and a revised plan with
corrected deed information that showed a public water main.  (Defendant's Evidence
(Doc. 19) at 79).  Discussion of the plan then followed, focused on the interpretation
of the Zoning Hearing Board on the propriety of common walls, the legal definition of
townhouses, multifamily homes or garden apartments, and the layout and design of
the cabins.  (Id. at 80).  The Supervisors voted on a motion to approve the
subdivision and preliminary land development plan.  (Id.).  The motion failed, three
votes to two.  (Id.)  The Supervisors did not vote to reject the plan altogether,
however.  (Id.).

The camp buildings had been destroyed by the time the Coolbaugh Township
Board of Supervisors met for a final time on the issue of plaintiff's plan on June 18,
2002.  (Young Affidavit, at ¶ 48).  At the start of this discussion, Supervisor Kelly
asked plaintiff if the camp buildings had been destroyed. (Id. at ¶ 50).  When plaintiff
confirmed their destruction, Kelly responded "that's all I needed to know."  (Id. at ¶
51).  In discussion, George Westervelt, attorney for Frank Falzett, argued that the
plan should be rejected because the proposed homes failed to meet the definition of
townhouses in city ordinances: they lacked a common wall, were not properly set
back, and had a reserve sewage area within the private right of way.  (Id. at 88).
After discussion, the Board voted 4-1 to approve plaintiff's project with several

8

conditions attached.  (Id. at 89).  First, plaintiff had to remove a sewage area from a private road right-of-way.  (Id.).  Second, the Board decided that before any building permits could be issued for the use of any existing camp structure as whole or part of a new residence, the plans had to be examined by a licensed architect and another person approved by the township.  (Id.).  Only after that examination could building permits be issued.  (Id.).  Once completed, the buildings would have to be inspected again to ensure compliance.  (Id.).  These conditions would not apply if new materials were used.  (Id.).

On April 15, 2005, plaintiff filed suit in Monroe County, Pennsylvania.  (See Complaint (Doc. 1)).  The first count in his three-count complaint alleged equal protection, substantive due process and procedural due process violations by the township.  (Id. at 6).  Plaintiff claimed that "defendants violated Plaintiff's right to equal protection by singling out  by arbitrary, capricious, harsh and unfair treatment resulting in deprivation of Plaintiff's property and creating great expense to Plaintiff.  (Id. at 7).  The second count alleged retaliation by the defendant in response to plaintiff's engaging in activity protected by the First and Fourteenth Amendments to the United States Constitution.  (Id.).  The plaintiff alleged that the retaliation came in response to "Plaintiff's expressed opinion that Defendant's concern over the creosote and 'common wall' issues were not properly part of the preliminary land development process and for Plaintiff's attempt to seek redress by requesting prompt conditional approval of his Plan before the deadline for destruction of his

buildings." (Id.).  The third count raised a claim based on the Township's "policy, custom and/or official decision."  (Id. at 8).  Plaintiff alleged that "despite due process procedure set forth in the subdivision ordinance and land development ordinance, Coolbaugh Township has established a custom or policy to delay arbitrarily any applications for land use development and to frustrate the procedures set forth in applicable law."  (Id.).  A desire to "prevent commercial growth" motivated the township to establish these policies, and plaintiff contended that they deprived him of due process.  (Id.).  Plaintiff claimed he suffered lost income, humiliation, and mental anguish from these policies, and sought compensatory damages and attorney fees under 42 U.S.C. § 1988.  (Id. at 9).

On April 20, 2005 defendant filed a notice of removal with this court.  (Doc. 2). Plaintiff filed an amended complaint with this court on June 14, 2005.  (See Amended Complaint).  The plaintiff made substantially the same factual allegations. (Id.).  The amended complaint raised only two causes of action.  One count alleged federal constitutional violations of equal protection, substantive due process and procedural due process under the Fourteenth Amendment to the United States Constitution.  (Id.).  The second count alleged retaliation against the plaintiff by the Township for exercise of his First Amendment free speech rights.  (Id.).  After discovery closed, the defendant filed a motion for summary judgment.  (Doc. 16). The parties briefed the matter, and it is now our task to decide whether to grant it.

**II.  Jurisdiction**

As this case is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for

constitutional violations, we  have jurisdiction under 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States.").

## III.  Legal Standard

Granting summary judgment is proper if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion.  Int'l Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

11

proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## IV.  Defendant's Motion

Defendant raises several grounds in arguing for summary judgment.  We will address each in turn.

## A.  Monell Claim

Defendant argues that Coolbaugh Township is immune from suit under 42 U.S.C. § 1983 because plaintiff "has not produced sufficient evidence of record and has failed to allege any type of policy or custom necessary to hold Coolbaugh Township and the Coolbaugh Township Board of Supervisors liable for a civil rights violation."  (Defendant's Brief in Support of Motion for Summary Judgment) (Doc. 17) at 6).  Defendant does not elaborate, however, on why the planning decisions made by the Township's Planning Commission and Board of Supervisors are not the sort of decisions of municipal policy or custom to which liability can attach.  We conclude that the Township could be liable for decisions that delayed the plaintiff's permit to develop his property, and helped lead to the destruction of the cabins.

Torts committed by employees do not make a municipality liable and "a local governing body can be held liable only for an official policy or custom." San Filippo v. Bongiovanni, 30 F. 3d 424, 445 (3d Cir. 1994).  Under the standard first articulated in Monell v. Dept. of Soc. Servs., "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978).  Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Here, plaintiff's complaint is with the Township's decision to delay final approval of his project until the cabins he had purchased were destroyed.  Such a decision, made by a municipal body and based on municipal ordinances, clearly is an action that "implements a . . . decision officially adopted and promulgated" by city officials, and thus attaches the potential for liability to Coolbaugh Township.  See Monell, 436 U.S. at 690.  Since the basis of plaintiff's constitutional claim is Township planning decisions he contends served as retaliation for his protected speech, those actions present "a direct causal link between a municipal policy" and the claims of unconstitutional deprivation.  Brown, 269 F.3d at 214.  We will not, therefore, grant summary judgment on the basis of municipal immunity.

13

## B. Procedural Due Process

Defendant argues that plaintiff has not advanced evidence sufficient to survive summary judgment for his procedural due process claim.  (Defendant's Memorandum of Law in Support of Motion for Summary Judgment (Doc. 17) at 5).  Because the Third Circuit has concluded that Pennsylvania's procedures for challenging zoning decisions meet the requirements of procedural due process, defendant argues, the plaintiff has failed to meet his burden under the summary judgment standard.  (Id.). We agree.  The plaintiff enjoyed hearings before the Coolbaugh Township Planning Commission, the Zoning Review Board, and the Board of Supervisors. He offers no indication that anything curtailed his ability to appeal to the Court of Common Pleas. This process thus followed the procedures available to a party challenging a zoning procedure under state law and "[i]n Pennsylvania the procedure for challenging zoning ordinances substantially conforms with the general due process guidelines enunciated by the Supreme Court."  Rogin v. Bensalem Twp., 616 F. 2d 680, 695 (3d Cir. 1980); Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1294 (3d Cir. 1993) (finding that the appeals process applied through Pennsylvania's zoning hearing board is "a scheme we have held to be consistent with due process.").  Thus, plaintiff would be entitled to judgment as a matter of law on the issue of procedural due process, and summary judgment on that issue is warranted.

## C. Substantive Due Process

Defendant also seeks summary judgment on plaintiff's substantive due process

claim.  Courts have determined that substantive due process rights are violated by

state actors only when those actors' behavior "shocks the conscience."  The United

States Supreme Court has defined such behavior as "conduct intended to injure in

some way unjustifiable by any government interest."  County of Sacramento v. Lewis,

523 U.S. 833, 849 (1998).  Conscience-shocking behavior consists of "only the most

egregious and arbitrary official conduct."  Assocs. in Obstetrics & Gynecology v.

Upper Merion Twp., 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003).  Behavior that shocks

the conscience depends on the facts of the case, and the court's "concern with

preserving the constitutional proportions of substantive due process demands an

exact analysis of the circumstances before any abuse of power is condemned as

conscience-shocking."  Id.; See also United Artists Theatre Circuit v. Twp. of

Warrington, 316 F.3d 39s, 399-400 (3d Cir. 2003) (holding that "executive action

violates substantive due process only when it shocks the conscience but that the

meaning of this standard varies depending on the factual context.").

    Zoning decisions can fall under this standard when government action to

restrict use is "arbitrary and irrational."  Neiderhiser v. Borough of Berwick, 840 F. 3d

213, 218 (3d Cir. 1988) (finding that a denial of a permit for building a store was

"arbitrary and irrational" because the only reason for denial was the fact that the video

store offered pornographic films); see also Indep. Enters. Inc. v. Pittsburgh Water and

Sewer Auth., 103 F. 3d 1165, 1180 (3d Cir. 1997) (holding that a substantive due

process claim applies only when a constitutionally protected interest like

15

landownership is involved, even if the decision appears "arbitrary and irrational.").

When substantive due process standards are applied to zoning decisions, a plaintiff

must allege more than "the kind of disagreement that is frequent in planning

disputes." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).  To

implicate due process, such a claim must contain "allegations of corruption or self-

dealing" or evidence that officials tried "to hamper development in order to interfere

with otherwise constitutionally protected activity at the project site, or" had "some bias

against an ethnic group," or performed a "virtual 'taking.'" Id.; see also Maple Props.,

Inc. v. Twp. of Upper Providence, 151 Fed. Appx. 174, 179 (3d Cir. 2005) (finding

that zoning decision violate due process when they involve "corruption, self-dealing,

or a concomitant infringement on other fundamental individual liberties, resulting in

harms that cannot be adequately rectified by pre- or post-deprivation proceedings.").

_____We find that the plaintiff has offered no evidence by which a rational juror could

find for the plaintiff on the issue of substantive due process.  The specific

circumstances of this case demonstrate that the behavior of Township Officials does

not shock the conscience.  Plaintiff offers no evidence of fraud or self-dealing on the

part of township officials, and none of ethnic or racial bias against the plaintiff. See,

e.g., Maple Props., 151 Fed. Appx. at 179 (finding that a re-zoning decision which

made plaintiff's plans for the property in question unworkable did not "shock the

conscience" because "[t]here [was] no evidence that individual members of the

Township Board of Supervisors enjoyed financial gain from the ordinance or that the

16

rezoning decision otherwise redounded to their personal advantage.").  There is also no evidence that defendants acted out of an attempt to prevent the plaintiff from exercising his constitutional rights on the property; the Township did, after all, approve the development and allow plaintiff to exercise that property right within reasonable limitations set by the Township.  The Township also reacted to concerns of other property owners about dangers presented by the plan plaintiff proposed. Responding to such concerns by delaying approval of the project or preventing the use of the structures that caused controversy is not behavior so arbitrary or irrational that it shocks the conscience.

The argument here was little more than a typical zoning dispute, where officials slowly worked through disagreements about site access, drainage, easements, and other issues frequently faced by town planning boards.  Town officials used procedural methods to ensure that plaintiff's proposed development met community standards.  While the cabins were a concern for Township officials from the first discussion of the project, officials dealt with other design issues before examining the structures themselves.  No evidence indicates that any zoning body or Township official ever approved the use of the cabins in the new development, whatever rulings had come down on the use of common walls.  Evidence that Town Supervisors worked slowly in approving the project, and even that they waited to approve it until after the plaintiff's cabins were destroyed, does not shock the conscience in a legal sense.  Indeed, the effect of the Board's decisions was to prevent plaintiff from using

the cabins on his proposed development.  A direct vote by any municipal body to prevent use of those cabins would not "shock the conscience," and we fail to see how use of procedural means to achieve those same ends could become conscience-shocking.

Further, the plaintiff can make no claim that the Township somehow caused a virtual taking of his property in the cabins.  Plaintiff purchased the cabins without assurance that the Township would approve their use in  his development.  No evidence indicates that he ever had approval to use the buildings; the Township's final decision on the matter required additional inspection before the cabins could become part of the project. Instead, plaintiff bought the cabins hoping he could use them as a cheap alternative to new construction for his development project.  He arranged to store the cabins on PMI property for a limited period while he awaited approval from Township officials.  That contract included a provision that the cabins would be destroyed if not removed by a certain date.  Plaintiff managed to extend the deadline beyond that original date, gaining several months to convince the Township to approve his plans.  No evidence indicates that the Township was a party to this agreement, and we fail to see how plaintiff can claim a virtual taking of his property by the Township when PMI merely carried out the terms of a private contract.  Plaintiff took a chance in purchasing the cabins before he had approval for his plan, and he advances no evidence of a substantive due process violation in the failure of this business proposition.

In short, the behavior of the Township does not "shock the conscience." Instead, the facts of this case are like those in  Eichenlaub, where the court found that allegations that "zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled" the plaintiffs did not constitute a violation of the right to substantive due process. Eichenlaub, 385 F.3d at 286.  Such behavior merely represented "examples of the kind of disagreement that is frequent in planning disputes." Id.   Here, plaintiff's complaint is largely that the Board took too long to approve his project, and that Commissioners did not want to approve his plans when they contained a particular element, the cabins.  These disagreements appear fairly typical of those that surround the activity of zoning boards and other municipal bodies, and no evidence of improper motives or self-dealing exist on the part of the defendants.  Accordingly, we will grant the defendants summary judgment on plaintiff's substantive due process claims.

## D.  Equal Protection

The defendant argues that plaintiff has failed to offer evidence sufficient to survive summary judgment on the issue of equal protection.  Plaintiff's equal protection claim is based on a "class of one" theory.  Under that theory, a plaintiff may obtain relief for equal protection violations "where the plaintiff alleges that she has

been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Third Circuit has held that a plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Plaintiff contends that the evidence demonstrates that no other development proposals before the Township "were denied approval or were not acted upon where all conditions under the ordinance had been met, where the planning commission had recommended approval and where the Township simply failed to act on the plan when a motion were [sic] made for approval at a special or regular meeting." (Doc. 21 at 10).  The plaintiff contends that a jury could find from these facts that there was no rational basis for this difference in treatment, and that "the only reasons the plan was not approved on June 10 was to frustrate the development by forcing the destruction of the Tegawitha buildings." (Id. at 11).

No evidence exists to indicate that plaintiff was treated differently from others similarly situated.  The plaintiff appears to insist that because others did not face similar delays in approval of their projects, losing them access to essential building materials, he suffered an equal protection violation.  The issue at question here, however, was the use of the cabins in the development, and this was the feature that made the project unique.  Other concerns raised in the approval process seem rather

20

mundane: easements, drainage and the like, and the parties worked through them.
According to the plaintiff, the cabins are what caused the differential treatment.  No
evidence shows that other proposals included such an element and then faced
dissimilar treatment.  Thus, no evidence exists to indicate that plaintiff constituted a
class of one.  See, e.g., Mosca v. Cole, No. 05-4350, 2007 WL 470505, at *17 (3d
Cir. Feb. 14, 2007). (finding that plaintiff, who lost his at-will employment after the
mayor determined he made a racially insensitive remark did not constitute a "class of
one" even though another white lawyer was accused of sexual harrassment and was
not fired because plaintiff "was not accused of sexual harassment by a coworker; he
was alleged to have made a derogatory comment about the incoming Mayor, outside
the workplace, to individuals who were not at the time employed by the City.").

       Even if we could conclude that plaintiff constituted a "class of one," we would
find that he has produced no evidence by which a reasonable juror could conclude
that the Township's zoning decisions lacked a rational basis.  Read must favorably to
the non-moving party, the evidence demonstrates a persistent skepticism by the
Township about the condition of the cabins and their suitability for use in the project.
This skepticism was motivated at least in part by fears expressed by owners of
adjoining properties about the dangers of creosote allegedly present on the cabins'
walls.  While the Township never held a specific vote on the suitability of the
structures, officials also never approved the plan with the cabins in it.  The evidence
indicates that Commissioners and Supervisors worked to ensure that the cabins were

not part of the project.  That they did so using procedural measures rather than through a direct vote does not indicate that they lacked a rational basis for their decision.  A jury could find that the complaints of neighbors and concerns about the conditions of the cabins provided a rational basis for the decision to exclude them from the project.  Since the plaintiff offers no evidence to counter this claim other than unsupported allegations that the Township wanted his plan to fail,[3] we will grant summary judgment on plaintiff's substantive due process claim.

## E.  First Amendment Retaliation

Defendant argues as well that plaintiff failed to produce evidence by which a reasonable juror could find that the Township violated his constitutional rights by retaliating against his exercise of his First Amendment free speech rights.  In order to make out a First Amendment retaliation case, the plaintiff must present evidence to show that he (1) engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; (3) that the protected activity caused the government to take the action that harmed the plaintiff.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

Defendant contends that plaintiff's claim fails because he did not engage in

---

[3]We do not find plaintiff's claim in his affidavit that a Supervisor only voted for plaintiff's project after finding out the cabins were destroyed as evidence that the Township lacked a rational basis for its actions that supposedly prevented the use of the cabins on the property.  In fact, this seems evidence that the problem with the project was the cabins, not the plaintiff.  Since there is evidence of a rational basis for the decision to exclude the cabins, we do not credit this evidence as part of a claim that the Township irrationally sought to exclude the plaintiff's project.

"any protected activity."  (Brief in Support of Defendant's Motion for Summary

Judgment (Doc. 17) at 15).  Here, defendant points out, "this is not a case where Mr.

Young was speaking out against Township supervisors," and his allegedly protected

speech was not "a matter of public concern."  (Id.).  The Supervisors ultimately

approved plaintiff's plan, defendant asserts, and this raises the "question [of] whether

Mr. Young suffered any type of adverse action by Coolbaugh Township against him."

(Id. at 16).   Plaintiff disputes that he did not engage in protected speech, pointing out

that "a landowner's speech at municipal meetings and/or his petition requesting an

interpretation of zoning requirements by the zoning hearing board even if concerned

with private grievances, is entitled to First Amendment Protection."  (Brief in

Opposition to Motion for Summary Judgment (Doc. 21) (hereinafter "Defendant's

Brief" at 12); citing Eichenlaub, 385 F.3d at 284.

A jury could find that plaintiff engaged in protected activity.  Defendant

misstates the law in contending that plaintiff's speech was entitled to protection only

if his speech addressed an issue of public concern.  (Defendant's Brief at 15).  Such

a requirement, courts have found, apply only in cases where a public employee sues

the government for First Amendment retaliation.  See Eichenlaub, 385 F.3d at 284

(finding that the district court erred in requiring that private speech address a matter

of public concern in order to enjoy protected status since "while speech on topics of

public concern may stand on the 'highest rung' of the ladder of the First Amendment,

private speech (unless obscene or fighting words or the like) is still protected on the

First Amendment ladder.").   Here, the protected activity against which plaintiff alleges the Township retaliated was his "speech at municipal meetings and/or his petition requesting an interpretation of zoning requirements by the zoning hearing board." (Doc. 21 at 12).  Plaintiff engaged in protected activity, since the right to petition the government and access to judicial proceedings is protected by the First Amendment.  See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138 (1961) (finding that "[t]he right of petition is one of the freedoms protected by the Bill of Rights."); San Filippo, 30 F.3d at 434-35 (holding that the First Amendment protects both speech and "filing both of lawsuits, and also of grievances under a collective bargaining agreement . . . activities that implicate the petition clause, rather than the free speech clause, of the first amendment).  If a jury found that the Township retaliated against the plaintiff for filing these claims, plaintiff would be entitled to relief.

We find, however, that no evidence exists by which a reasonable juror could conclude that the plaintiff's exercise of his right to petition caused a retaliatory action by the Township.  As evidence of retaliation, plaintiff contends that "[a] jury could find that the Township, in addition to its general unhappiness with Young's proposal, wanted to deny Young the benefit of his litigated battle over the 'common wall' issue." (Plaintiff's Brief at 14).  One dispute in the planning process had been over whether buildings in Young's plan conformed to a city ordinance that addressed the need for a "common wall" in developments like the one plaintiff proposed.  The

24

plaintiff's design had prevailed before the Zoning Hearing Board.  Even after Young

won his appeal, however, the Township continued to address that issue at Board of

Supervisors' meetings.  (Plaintiff's Brief at 14).  A jury, plaintiff argues, could thus

find that the Township's action in delaying the plan before approving it, knowing that

the buildings would then be destroyed, represented an attempt "to deny Young the

benefit of his litigated battle over the 'common wall' issue."  (Id.).

We do not find that a jury could conclude that these delays represented

retaliation for plaintiff's victory in the dispute over whether his development required

dwellings that shared a common wall.  The supervisors may have disagreed with

plaintiff on the "common walls" issue, but the effect of their actions was not to

prevent plaintiff from developing a project that used common walls in the way the

Zoning Hearing Board had approved, but to prevent plaintiff from using the cabins he

had purchased.  Even after the cabins were destroyed, Young could still have built a

project that took advantage of his victory on the "common walls" issue, but at a

greater cost than with recycled materials.  The Supervisors' problem, apparently,

was not with the proposed design, but with the building that were to be used to

realize that design.  No evidence indicates that the Zoning Hearing Board ever

approved the use of the cabins in question; instead, the Board simply approved of

Young's interpretation of the "common wall" requirement.  There thus exists no

evidence by which a reasonable juror could find that the Township retaliated against

the plaintiff for exercising his free speech rights on the issue of the common wall.[4]

Accordingly, we will grant defendant's motion for summary judgment on the First

Amendment retaliation claim as well.

## IV. Conclusion

For the above-stated reasons, we will grant the defendant's motion for

summary judgment.  The plaintiff has failed to provide evidence by which any

reasonable jury could find for the plaintiff on any of his claims.  An appropriate order

follows.

---

[4]Plaintiff himself concedes that at least part of the Township's motivation in moving slowly in approving the project was a general dislike of the structures plaintiff proposed using in his project.  Such disputes are a normal part of zoning procedures and do not constitute retaliation or irrational behavior.

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT T. YOUNG,     :  No. 3:05cv802
     **Plaintiff**   :
           :  **(Judge Munley)**
           :
     **v.**      :
           :
**TOWNSHIP OF COOLBAUGH,** :
     **Defendant**  :

## ORDER

_____**AND NOW,** to wit, this 30th day of March 2007, the defendant's motion for

summary judgment (Doc. 16) is hereby **GRANTED**.  The Clerk of Court is directed to

close the case.


         **BY THE COURT:**


         **s/ James M. Munley_____**
         **James M. Munley**
         **United States District Court**